The PEOPLE of the State of Colorado, Plaintiff–Appellee,

v.

Charles L. PARRISH, Defendant–Appellant.

No. 93CA0309.

Colorado Court of Appeals, Div. III.

March 24, 1994.

Rehearing Denied April 21, 1994.

Certiorari Denied Aug. 29, 1994.

Gale A. Norton, Atty. Gen., Stephen K. ErkenBrack, Chief Deputy Atty. Gen., Timothy M. Tymkovich, Sol. Gen., Paul Koehler, Asst. Atty. Gen., Denver, for plaintiff-appellee.

Warren, Mundt & Martin, P.C., Thomas G. Martin, Colorado Springs, for defendant-appellant.

Opinion by Judge DAVIDSON.

Defendant, Charles L. Parrish, appeals from the trial court order denying his motion for release from the state hospital. We affirm.

In 1978, defendant was charged with attempted first degree murder, attempted first degree sexual assault, menacing, second degree assault, theft, and crime of violence. He was found not guilty by reason of insanity and was committed to the Colorado State Hospital in 1981, where he has remained since that time.

In March 1992, defendant filed a request for a hearing to consider his release from the state hospital pursuant to § 16–8–120, C.R.S. (1986 Repl.Vol. 8A). A committee of doctors conducted a release examination of the defendant prior to the hearing on his motion. The members of the committee concluded that defendant continued to suffer primarily from antisocial personality disorder and that he also manifested features of borderline personality disorder and paraphilia, a sexual disorder characterized by arousal in response to objects or situations not part of normal sexual arousal patterns. The committee further determined that defendant's abnormal mental condition would likely cause him to be dangerous either to himself or to others.

Three psychiatrists testified at the hearing on defendant's motion. The first was defendant's treating psychiatrist at the state hospital. She stated that defendant has an antisocial personality disorder and manifests fea-

tures of other personality disorders, including difficulty controlling his emotions, difficulty relating to other people, and a gender identity disturbance. She, like the members of the committee, concluded that defendant had an abnormal mental condition and that defendant remained dangerous as a result. The second doctor to testify was a member of the evaluation committee. He also stated that he considered defendant to suffer from an abnormal mental condition.

The third psychiatrist to testify, who was called by the defendant, agreed that defendant suffered from an antisocial personality disorder and that he continued to be a danger to himself or to others. Unlike the other experts, however, he testified that, in his opinion, antisocial personality disorder does not constitute a mental illness. Rather, it was his opinion that defendant simply had a mental condition that caused him to be dangerous. However, on cross-examination, the witness agreed that antisocial personality disorder was an abnormal mental condition.

The trial court concluded that, based on the testimony at the hearing, defendant has an abnormal mental condition and that, as a result of this mental condition, he remains dangerous either to himself or to others. Accordingly, defendant's motion for release was denied.

On appeal, defendant contends that his continued confinement is unlawful. We disagree.

### I.

■ Generally, a state's power to confine an individual in a non-criminal setting is limited. A state must show a legitimate and compelling interest to justify deprivation of a person's physical freedom. *United States v. Salerno,* 481 U.S. 739, 107 S.Ct. 2095, 95 L.Ed.2d 697 (1987).

Our supreme court has held that when a defendant has been adjudicated not guilty by reason of insanity for acts which, but for his insanity, should be punishable as crimes, that adjudication furnishes a legitimate basis for the immediate commitment of the defendant to an institution for observation and treatment. *People v. Chavez,* 629 P.2d 1040 (Colo. 1981).

In its analysis, the *Chavez* court ascertained that the statutory commitment scheme reflects a legislative determination that it is in the best interest of society to continue the commitment of those persons who exhibit both an abnormal mental condition and dangerousness, and it ruled that placing the burden of proof on the defendant to show that he is eligible for release does not violate due process.

Further, the *Chavez* court held that the General Assembly had adopted a stringent test for release in recognition of the increased risk to the public associated with the release decision and that this stringent test is reasonably related to the state's interest in public safety. *People v. Chavez, supra; see People v. Howell,* 196 Colo. 408, 586 P.2d 27 (1978); *People v. Giles,* 192 Colo. 240, 557 P.2d 408 (1976). *See also Jones v. United States,* 463 U.S. 354, 103 S.Ct. 3043, 77 L.Ed.2d 694 (1983) (courts should pay particular deference to reasonable legislative judgments about the relationship between dangerous behavior and mental illness).

Nonetheless, defendant contends, given his diagnosis of antisocial personality disorder, his immediate release is mandated by the recent United States Supreme Court decision of *Foucha v. Louisiana,* 504 U.S. ——, 112 S.Ct. 1780, 118 L.Ed.2d 437 (1992).

Foucha, previously found not guilty by reason of insanity, was confined in a psychiatric facility and was diagnosed as having an antisocial personality disorder. He sought release, and a panel of three doctors concluded that, although Foucha remained dangerous, he no longer suffered from a mental illness. Based on the finding that he was still dangerous, the lower court returned Foucha to the psychiatric facility for continued confinement. The Supreme Court, however, reversed. It held, among other things, that the Louisiana statute governing release from commitment violated due process because it allowed an insanity acquittee to be committed to a mental institution until he is able to demonstrate that he is not dangerous, even though he does not suffer from any mental illness. The court concluded that due pro-

cess requires that both mental illness and dangerousness be present in order to extend a person's commitment.

Thus, defendant argues as follows: Because *Foucha* held that due process considerations require that the continued confinement of a person found not guilty by reason of insanity be based on a finding of both mental illness and dangerousness, and because § 16–8–120 defines eligibility for release in terms of "abnormal mental condition," persons who have an "abnormal mental condition" may not be "mentally ill" and thus cannot be deprived of their liberty in violation of due process of law. He contends that he was found to be ineligible for release based upon his antisocial personality disorder, which, he claims, is not a mental illness according to *Foucha*. Thus, he asserts, although he may be dangerous, he does not have a mental illness and therefore is entitled to immediate release.

In other words, defendant's position is that continued commitment in a psychiatric institution requires that the individual detained have a mental illness and be dangerous to himself or to others; an antisocial personality disorder is not a mental illness; and that, accordingly, his diagnosis of antisocial personality disorder is not a valid basis for continued confinement under *Foucha*.

We conclude, for several reasons, that defendant's release is not mandated by the *Foucha* decision.

■ First, the Colorado and Louisiana release statutes differ in an important respect. Under the Louisiana statutory scheme, an acquittee may be returned to the mental institution if found to be dangerous, whether or not he is also mentally ill. *See Foucha v. Louisiana, supra.* The Colorado release statute, § 16–8–120, however, requires both a finding of abnormal mental condition *and* dangerousness in order for a court to order continued confinement. As we interpret these terms, this provision falls squarely within the *Foucha* requirements.

■ Defendant argues that, nonetheless, *Foucha* specifically requires a finding of mental illness, but the Colorado release statute appears to allow for the continued con-

finement of a person who is not mentally ill. This argument is based on defendant's perception that the term "abnormal mental condition," as set forth in § 16–8–120, is broader than the term "mental illness," as set forth in *Foucha*. If so, defendant argues, persons who have an "abnormal mental condition" may not be "mentally ill" and therefore cannot be confined under the *Foucha* decision. We do not agree.

A person confined as the result of a verdict of not guilty by reason of insanity may file a motion for release in the trial court. The court may then order a release hearing after obtaining a report about defendant's mental condition from the chief officer of the institution in which that person is committed. *See* § 16–8–115, C.R.S. (1986 Rep. Vol. 8A). Section 16–8–120 sets forth the standard for determining whether a person found not guilty by reason of insanity is eligible for release. That statute provides that a person is eligible for release if he "has no abnormal mental condition which would be likely to cause him to be dangerous either to himself or to others or to the community in the reasonably foreseeable future."

In the definitional section applicable to the statute at issue, the General Assembly has determined that a person is ineligible for release when he is suffering from a "mental disease or defect" which is likely to cause him to be dangerous to himself, to others, or to the community if he is permitted to remain at liberty. Section 16–8–102(4), C.R.S. (1986 Repl.Vol. 8A). Similarly, a person is eligible for release from commitment if the chief officer of the institution determines that he no longer requires hospitalization because he no longer suffers from a "mental disease or defect" which causes him to be dangerous. Section 16–8–116(1), C.R.S. (1986 Repl.Vol. 8A). In view of these other statutes, it is evident that, for purposes of determining a person's eligibility for release, the General Assembly has determined that the terms "mental disease or defect" and "abnormal mental condition" are equivalent.

Defendant offers no articulable distinction between "mental disease or defect," and "mental illness." Moreover, the *Foucha* decision does not purport to define the term

"mental illness," and does not appear to use it—either in the psychiatric or legal sense—as a term of art. In fact, the opinion uses the terms mental disease and mental illness interchangeably. *See also Jones v. United States, supra* (there remains a great deal of uncertainty and an absence of knowledge regarding the science of mental disease).

Secondly, in *Foucha,* there was no controversy surrounding the status of defendant's antisocial personality disorder. The doctors who examined Foucha unanimously agreed that his antisocial personality disorder was not a mental illness and that Foucha was free of mental disease, and the Supreme Court accepted that medical finding for purposes of its ruling.

■ In contrast, here, two of the three experts who testified at defendant's release hearing opined that defendant still was not free of mental disease or defect and also that antisocial personality disorder is an abnormal mental condition. Hence, the question of whether defendant suffered from an abnormal mental condition was a contested matter at the hearing. *See In re Blodgett,* 510 N.W.2d 910 (Minn.1994) (*Foucha* does not prohibit Minnesota's commitment program for psychopathic personalities; the "psychopathic personality" is an identifiable and discernible violent sexual deviant condition or disorder.); *In re Young,* 122 Wash.2d 1, 857 P.2d 989 (1993) (paraphilia and antisocial personality disorder are mental disorders permitting—*Foucha* notwithstanding—continued confinement of sexually violent offenders).

Third, the record here indicates that the defendant suffers not only from antisocial personality, but also from several other disorders, including features of borderline personality disorder. Although defendant contends that the basis for his initial institutionalization was drug-induced psychosis, there is little record support for his assertion. To the contrary, the record shows that when he was found not guilty by reason of insanity, he had been diagnosed with a number of disorders, including severe antisocial personality disorder, multiple sexual perversions, and atypical gender identity disorder.

The record further reveals that, up until the time of his release hearing, defendant exhibited escalating sexually provocative behavior toward other patients and hospital staff. He continued to show difficulty with impulse control, difficulty controlling his emotions, and trouble relating to other people. Further, one expert was of the opinion that defendant's gender identity disturbance, which has continued since the time of his initial commitment, constituted paraphilia.

Fourth, the *Foucha* decision was based, in part, on the determination that due process requires that a person who is confined must have a treatable illness. In that case, it was uncontested that Foucha's antisocial personality condition was untreatable. Here, however, although during the year immediately preceding the evaluation for his release hearing defendant had made no major progress in his treatment, there is record evidence that his difficulties can be and have been treated. The experts testified that defendant has shown improvement during his years of confinement and that he could improve to the point of being eligible for release without dangerous tendencies.

Thus, we conclude that § 16–8–120 complies with due process standards as set forth in *Foucha* because it conditions continued commitment on a finding of both a mental disorder and dangerousness. Further, under the circumstances here, we are convinced that there was ample reason beyond the diagnosis of antisocial personality disorder to support the trial court's order of continued confinement in this case.

## II.

■ Finally, defendant contends that § 16–8–120 violates equal protection because it permits the continued hospitalization of a person found not guilty by reason of insanity for a longer period than a person could have been imprisoned had he been convicted of the crime charged. This argument was examined and rejected in *Jones v. United States, supra.*

Moreover, insofar as defendant's briefs may refer to equal protection considerations of criminal, as opposed to civil release provi-

sions, we do not address such issue since defendant did not raise this aspect of the *Foucha* decision either in the trial court or with any specificity on appeal. Also, we note that equal protection challenges to this statutory scheme were raised and rejected in *People v. Chavez, supra,* and because it is not properly before us, we do not address any issue as to the viability of that aspect of *People v. Chavez* after *Foucha.*

The order is affirmed.

CRISWELL and TAUBMAN, JJ., concur.