**Charles L. PARRISH, Petitioner–Appellant,**

v.

**STATE OF COLORADO; Gale A. Norton, Attorney General, Respondents–Appellees.**

No. 95–1229.

United States Court of Appeals, Tenth Circuit.

March 5, 1996.

Thomas G. Martin, Warren, Mundt, & Martin, P.C., Colorado Springs, Colorado, for Petitioner–Appellant.

Paul E. Koehler (Gale A. Norton, Attorney General, with him on the briefs), Assistant Attorney General, Denver, Colorado, for Respondents–Appellees.

Before PORFILIO, HENRY, and BRISCOE, Circuit Judges.

JOHN C. PORFILIO, Circuit Judge.

Charles L. Parrish appeals the denial of his 28 U.S.C. § 2254 habeas petition which he filed after the District Court of El Paso County, Colorado refused to release him from the custody of the Colorado Mental Health Institute in Pueblo, Colorado (the Hospital). His petition challenges the constitutionality of the statute upon which his release is governed. Because we believe the state has interpreted its statute in a way that does no violence to the Constitution, and because that is an interpretation by which we are bound, we affirm.

Mr. Parrish seeks to have us declare unconstitutional Colo.Rev.Stat. § 16–8–120(1). This part of Colorado's statutory scheme to determine insanity or incompetency and release after such findings states:

> As to any person charged with any crime allegedly committed on or after June 2, 1965, the test for determination of a defendant's sanity for release from commitment, or his eligibility for conditional release, shall be: **"That the defendant has no abnormal mental condition which would be likely to cause him to be dangerous either to himself or to others or to the community in the reasonably foreseeable future."**

(emphasis added). Mr. Parrish advances two arguments in support of his position.

First, he postulates the designation of "abnormal mental condition," as the applicable standard for release from commitment, is overbroad, vague, and unconstitutional under *Foucha v. Louisiana,* 504 U.S. 71, 112 S.Ct. 1780, 118 L.Ed.2d 437 (1992). Second, he contends the State of Colorado cannot continue to detain an acquittee in the Mental Hospital who, although diagnosed sane and free from mental illness, will always have an untreatable antisocial personality which may make him a danger to himself or others.

### I.

Mr. Parrish was charged with attempted first degree sexual assault, attempted first degree murder, menacing, assault in the second degree, theft, and a crime of violence. On August 20, 1981, an El Paso County jury found him not guilty by reason of insanity and, as required by statute, the state court committed him to the Hospital.

In March 1992, Mr. Parrish instituted release proceedings in the El Paso County District Court, triggering a state statutory procedure, Colo.Rev.Stat. § 16–8–120, which begins with a release examination by a release committee of three doctors at the Hospital. After examining Mr. Parrish, the committee reported Mr. Parrish "continues to have an abnormal mental condition which would likely cause him to be dangerous either to himself or to others or to the community in the reasonably foreseeable future. He is, therefore, considered to be not eligible for release."

At a hearing on the motion for release held in state court, three psychiatrists testified. All three concluded Mr. Parrish is suffering from an antisocial personality disorder. His treating physician described him as manifesting a borderline personality disorder and paraphilia (sexual deviancy). She testified Mr. Parrish has a "gender identity disturbance" and is dangerous because he has difficulty controlling his emotions and relating to others. While one of the physicians did not believe an antisocial personality disorder was akin to mental illness, all three believed Mr. Parrish suffered from an abnormal mental condition.

Based on this testimony, the state trial court denied his release. Mr. Parrish appealed the decision to the Colorado Court of Appeals, raising the argument he presents to us. The Court of Appeals held § 16–8–120(1) satisfied *Foucha*, and there was ample evidence beyond the diagnosis of antisocial personality disorder to support the trial court's order to continue his confinement. *People v. Parrish*, 879 P.2d 453 (Colo.App. 1994).

Relying upon the Supreme Court of Colorado's analysis of the statute and its underlying legislative policy, *People v. Chavez*, 629 P.2d 1040 (Colo.1981), the Court of Appeals reasserted the Colorado legislature has determined "it is in the best interest of society to continue the commitment of those persons who exhibit both an abnormal mental condition and dangerousness." *People v. Parrish*, 879 P.2d at 454. The court further concluded the legislative policy regarding release of the criminally insane "is reasonably related to public safety." *Id.* at 455.

With that policy as a guidepost, the Court of Appeals then reviewed the Colorado statutes defining eligibility for release and concluded, "for purposes of determining a person's eligibility for release, the General Assembly has determined that the terms 'mental disease or defect' and 'abnormal mental condition' are equivalent." *Id.* The court also noted Mr. Parrish offered no distinction between the terms "mental disease or defect" and "abnormal mental condition," and none was in evidence. *Id.* Using those circumstances and other factual distinctions, the court found *Foucha* distinguishable and inapposite. *Id.* at 455–57. The United States District Court agreed and denied Mr. Parrish a writ of habeas corpus.

### II.

We begin our analysis with *Jones v. United States*, 463 U.S. 354, 103 S.Ct. 3043, 77 L.Ed.2d 694 (1983), in which the Court addressed the question whether a petitioner who was committed to a mental hospital after an insanity verdict must be released because he has been hospitalized for a period longer than he might have served in prison had he been convicted. Against the stricture that "commitment for any purpose constitutes a significant deprivation of liberty that requires due process protection," *id.* at 361, 103 S.Ct. at 3048 (quoting *Addington v. Texas*, 441 U.S. 418, 425, 99 S.Ct. 1804, 1809, 60 L.Ed.2d 323 (1979)), the Court first concluded that a "finding of not guilty by reason of insanity is a sufficient foundation for commitment of an insanity acquittee for the purposes of treatment and the protection of society." 463 U.S. at 366, 103 S.Ct. at 3051. However, in response to petitioner's constitu-

tional argument that the state court could not hold him beyond the time he would have been released if convicted by a jury, the Court held an acquittee's continued confinement was constitutional "on the basis of the insanity judgment, to confine him to a mental institution until such time as he has regained his sanity or is no longer a danger to himself or society." *Id.* at 370, 103 S.Ct. at 3052–53. The Court explained, "This holding accords with the widely and reasonably held view that insanity acquittees constitute a special class that should be treated differently from other candidates for commitment." *Id.* Jones, however, did not seek release based on non-illness or non-dangerousness.

In 1992, Foucha did. The Court was called upon to decide whether *Jones* meant a state could indefinitely confine someone found to be a danger to himself or others whether or not he is then mentally ill. *Foucha,* 504 U.S. at 71, 112 S.Ct. at 1780. Foucha had been charged with aggravated burglary and illegal discharge of a firearm. Although found competent to stand trial, the trial court ruled Foucha was not guilty by reason of insanity, deciding he was unable to distinguish between right and wrong and thus was insane at the time he committed the crimes. Four years later, the superintendent at the facility where Foucha was confined recommended his release. Under Louisiana's statutory release provision, however, the state could continue to confine indefinitely an acquittee in a mental facility who, although not mentally ill, might be dangerous to himself or to others if released.

Evaluating this statutory scheme, the Court distinguished that while a state under its police power may imprison convicted criminals for the purposes of deterrence and retribution with constitutional limitations, "[h]ere the State has no such punitive interest. As Foucha was not convicted, he may not be punished." 504 U.S. at 80, 112 S.Ct. at 1785 (citing *Jones,* 463 U.S. at 369, 103 S.Ct. at 3052). The Court noted in the Louisiana scheme, once the acquittee or superintendent begins release proceedings, the acquittee has the burden of proving he is not dangerous in a release hearing. At that

hearing for Foucha, "no doctor or any other person testified positively that in his opinion Foucha would be a danger to the community, let alone gave the basis for such an opinion. There was only a description of Foucha's behavior at [the institution] and his antisocial personality, along with a refusal to certify that he would not be dangerous." *Id.* at 82, 112 S.Ct. at 1786. The Court found one testifying doctor's statement, "I don't feel comfortable in certifying that he would not be a danger to himself or to other people," was "not enough to defeat Foucha's liberty interest under the Constitution in being freed from indefinite confinement in a mental facility." *Id.* The statute's sole requirement of finding an acquittee remains a danger to himself is, thus, constitutionally insufficient because it "would permit the State to hold indefinitely any other insanity acquittee not mentally ill who could be shown to have a personality disorder that may lead to criminal conduct. The same would be true of any convicted criminal, even though he has completed his prison term." *Id.* at 82–83, 112 S.Ct. at 1787.

The Court, unfortunately, did not define the term "mental illness." However, it stated, if an acquittee not suffering from a mental disease or illness is to be held, "he should not be held as a mentally ill person." *Id.* at 79, 112 S.Ct. at 1785. The Court reminded that as in *Jackson v. Indiana,* 406 U.S. 715, 92 S.Ct. 1845, 32 L.Ed.2d 435 (1972), a deaf mute for whom "nothing could be done to cure [the condition]" could not be held indefinitely but "only long enough to determine if he could be cured and become competent." *Id.*

Previously, in *Glatz v. Kort,* 807 F.2d 1514 (10th Cir.1986), we addressed the constitutionality of the same Colorado criminal commitment and release procedures. Although that class action also challenged § 16–8–120(1) as unconstitutionally vague, its focus was solely on the requirement of predicting future dangerousness. To assess this vagueness challenge, we examined cases involving the death penalty where juries must consider whether defendant's continuing danger to society is a factor in imposing the death penalty. On that basis, we rejected the facial

challenge, finding § 16–8–120(1) was not unconstitutionally vague. With this background in mind, we turn to the issues.

### III.

Mr. Parrish maintains the state legislature did not define the term "abnormal mental condition." His three examining psychiatrists could not agree on whether antisocial personality disorder was a "mental illness" but agreed it could be considered an "abnormal mental condition," a mental condition which deviates from the average or so-called normal mental states.

We do note, however, the psychiatrists were unanimous in concluding those terms employed in the statute were legal and not medical. This concept, though not elaborated by the parties, is the evident root of the conceptual confusion generated by this case.

The distinction between the two terms was confused even more by a psychiatrist called by Mr. Parrish during the state court hearing. While discussing the concepts of an antisocial personality and mental illness, Dr. Arthur Roberts stated:

> Mental illness can be interpreted any way that you choose to interpret it. Basically, you can include every disorder all the way from severely disordered people, such as people who are in acute phase of schizophrenia, also included in the manual of mental disorders is nicotine addiction. So I guess it depends upon the beholder, however you want to view it. It seems to be open to interpretation. The manual shouldn't be used to define legal definitions of such as insanity.

(State Record, V. I, p. 69). At this juncture, then, we find ourselves involved with legal concepts to which Mr. Parrish attempts to apply medical criteria and vice versa. The results are enigmatic.

Nonetheless, by equating "abnormal mental condition" with "mental illness," Mr. Parrish urges Colorado used a broader definition to determine release requirements because some mental conditions, as demonstrated, are not "mental illnesses." The release standard, thus, exceeds the constitutional requisites set out in *Foucha* and *Vitek v. Jones,*

445 U.S. 480, 100 S.Ct. 1254, 63 L.Ed.2d 552 (1980), which require that mental illness and dangerousness must be established for non-release, he concludes.

We believe this argument misses the mark. First, the record is clear that illnesses recognized by physicians to have a psychiatric basis sometimes do not equate with legal concepts defining mental states. In this instance, the statute defines, as a legal concept, the mental state an acquittee must have before he may be released from confinement. Given the proper definition of that mental state as a legal concept, the test is not whether the medical state is medically definable, but whether the acquittee has a mental condition that fits the legal definition. Thus, the situation is quite the same as with the definition of insanity.

Insanity is a legal concept not found in medical literature as a disease. Though the presence of a disease or mental disorder is a requisite of a finding of insanity, not all persons suffering from mental illness are insane. Our jurisprudence has accommodated the difficulty of fitting medicine and the law together to reach an accord with which practitioners of both arts can deal. The same approach is needed here.

The crux of the issue, then, is not whether the acquittee must be ill in the medical sense, but whether his mental state fits a constitutionally valid legal definition. That brings us to the second reason why Mr. Parrish's argument fails to persuade.

The *Foucha* Court did not define what it described as a "mental illness." Indeed, it did not have to because the real significance of the holding is that unless an acquittee has an identifiable mental condition, he cannot be held by the state merely because he is dangerous. The predicate for this conclusion is that without a medical basis for holding the acquittee, the state has no punitive interest for confinement. 504 U.S. at 78–80, 112 S.Ct. at 1785.

Yet, despite the legal labels that may arguably be attached to Mr. Parrish's psychiatric state, it is evident he suffers from a mental condition that results in his dangerousness.

The existence of that condition is enough to remove this case from the umbra of *Foucha.*

That the Colorado Court of Appeals has defined the legal terms "mental disease or defect" and "abnormal mental condition" as equivalent is very significant because we are bound by that definition. *Reyes v. Quintana,* 853 F.2d 784, 788 (10th Cir.1988); *Cordova v. Romero,* 614 F.2d 1267, 1269 (10th Cir.) ("[W]e are bound by the state's interpretation of the language of its own statutes and the legislative intent behind them."), *cert. denied,* 449 U.S. 851, 101 S.Ct. 142, 66 L.Ed.2d 63 (1980); *Redford v. Smith,* 543 F.2d 726, 732 (10th Cir.1976) ("The federal courts are bound by a state's interpretation of its own statutes."). The Colorado court has defined its statutory law in a way that makes the existence of a mental disease a necessary requirement for the continued confinement of an acquittee. Therefore, contrary to the Louisiana law found wanting in *Foucha,* Colorado law will not permit the state to hold an acquittee only because he is dangerous. This distinction also renders inapposite *Young v. Weston,* 898 F.Supp. 744 (W.D.Wash.1995).

In *Young,* a Washington statute permitted the state to hold a person as a "sexually violent predator" for the purpose of treatment and protection of the public. The district court held the statute violative of due process because it permitted the denial of release without the necessary concomitant of the existence of a mental illness. Because the Colorado statute is not deficient in this manner, *Young* provides us with no guidance. We reject Mr. Parrish's first argument.

■ Mr. Parrish also contends the state may not detain a person who is diagnosed sane and free from mental illness just because he has an antisocial personality disorder and may, consequently, be a danger to himself. We need not address ourselves to the constitutional issue because there is no record support for the assumption Mr. Parrish falls within the class of committees to which the premise applies.

Mr. Parrish predicates his argument on the fact his insanity verdict was caused by toxic psychosis resulting from polysubstance abuse and alcohol dependence. He assures that toxic psychosis "is no longer a part of his diagnosis," drugs and alcohol having been withheld during his institutionalization. With the elimination of the psychosis, he states, his remaining diagnosis is antisocial personality disorder, a condition treatable, but not curable.

This premise is factually flawed. First, Mr. Parrish directs us to no supportive testimony in the record. Indeed, about the contention his underlying toxic psychosis is no longer present, the state court of appeals stated, "there is little record support for his assertion." *People v. Parrish,* 879 P.2d at 456. More importantly, there is no testimony in the record that Mr. Parrish is "sane."

When asked whether a person could recover sanity after a change of the conditions which resulted in toxic psychosis, Mr. Parrish's treating psychiatrist responded, "Not really, ... [because of the legal definition, a person's insanity] is only with regard to a specific thing or act that somebody is doing." (State Record, V. I, p. 27). We therefore, can place no store in the notion the original psychiatric basis for the insanity verdict no longer exists.

Also, there is ample evidence in the record before us to indicate Mr. Parrish suffers from a treatable mental condition which, although not curable, is still subject to an improvement that would justify his future release. Indeed, even Dr. Roberts thought Mr. Parrish could benefit from further confinement in a ward providing "confrontational" group therapy. (State Record, V. I, pp. 89–90).

Mr. Parrish reasons a mental disease or illness presumes a condition that can be cured or at least treated. He urges antisocial personality disorder cannot be cured or treated "with any greater success on a commitment basis than it can on an outpatient level." However, that assertion is inconsistent with the opinion of the treating psychiatrist who stated, not only has Mr. Parrish's condition "improved significantly," (State Record, V. I, at p. 10), but his borderline, antisocial personality is treatable. *Id.* at pp. 11, 14. Finally, when the doctor was asked whether further treatment could "lead to a

point where he could be released and not likely to be a danger to himself or others," she responded, "Yes, I think that Mr. Parrish could most certainly progress through treatment and in fact be a safe human being [by remaining] in treatment." *Id.* at p. 22. We are not, therefore, willing to assume the postulate of Mr. Parrish that his continued confinement would result in no medical benefits.

Accordingly, we believe the record supports the conclusion Mr. Parrish does not fall into the classification of those to whom his constitutional argument applies. Therefore, we will not embark upon an exploration of the legal theory.

**AFFIRMED.**