**The PEOPLE of the State of Colorado, Plaintiff–Appellee,**

v.

**Anthony JONES, Defendant–Appellant.**

**No. 94CA1470.**

Colorado Court of Appeals, Div. II.

May 30, 1996.

Rehearing Denied July 11, 1996.

Certiorari Denied March 31, 1997.

Gale A. Norton, Attorney General, Stephen K. ErkenBrack, Chief Deputy Attorney General, Timothy M. Tymkovich, Solicitor General, John J. Krause, Assistant Attorney General, Denver, for Plaintiff–Appellee.

David F. Vela, Colorado State Public Defender, Thomas M. Van Cleave, III, Deputy State Public Defender, Denver, for Defendant–Appellant.

Opinion by Judge HUME.

Defendant, Anthony Jones, appeals the trial court's denial of his motion for release from commitment. We affirm.

On September 23, 1987, defendant was charged with the offenses of second degree assault, possession of contraband, and as an habitual criminal. He entered a plea of not guilty by reason of insanity to the charges. The court subsequently found him not guilty by reason of insanity (NGI) and committed him to the custody of the department of institutions as required by the statute then in effect. Colo. Sess. Laws 1972, ch. 44, § 39–8–105(4) at 226 (now codified as § 16–8–105(4), C.R.S. (1995 Cum.Supp.)).

On August 21, 1989, defendant filed a motion for a release hearing under § 16–8–115(1), C.R.S. (1986 Repl.Vol. 8A). At a hearing on the motion and during the following release proceeding, physicians testified as expert witnesses that, in their opinion, defendant was sane, but that he was suffering from an antisocial personality disorder. The experts stated that, although an antisocial personality disorder is not a mental disease or defect, it is an abnormal mental condition. Further, the experts opined that defendant would pose a danger to himself or the community if he were released from commitment. As a result, they considered defendant ineligible for release according to the requirements of § 16–8–120(3), C.R.S. (1986 Repl.Vol. 8A). In response to a specific query by the trial court, one of the expert witnesses also testified that defendant's condition was treatable.

Following the hearing, the trial court, relying on *People v. Parrish*, 879 P.2d 453 (Colo.

App.1994), determined that § 16–8–120(3) requires continued confinement upon a finding that a person seeking release from commitment has a mental illness and poses a threat of danger to self or the community. The court also decided that, according to *Parrish*, an "abnormal mental condition," under § 16–8–120(3), was equivalent to mental disease or defect for purposes of release from confinement provided the defendant's mental condition was treatable. As a result, the court determined that the presence of a mental disease or defect as manifested by defendant's treatable abnormal mental condition in conjunction with the continuing threat to his own safety and the safety of the community rendered him ineligible for release.

Defendant contends that his continued confinement based on the diagnosis of a treatable "abnormal mental condition" violates his due process rights. He argues that if *People v. Parrish, supra,* equates "abnormal mental condition" with "mental disease or defect," then § 16–8–120(3) should be narrowly construed to include only those abnormal mental conditions that are also mental diseases or defects. We disagree.

Defendant raises an issue similar to that addressed in *People v. Parrish, supra,* and thus, we find that holding persuasive here. Defendant urges us not to follow *Parrish* because the person seeking release in that case had other mental disorders in addition to an antisocial personality disorder, while defendant has only an antisocial personality disorder. This we decline to do. Rather, we read *Parrish* as requiring continued confinement under § 16–8–120(3) for a person who is diagnosed with an abnormal mental condition and who is also determined to be dangerous to self or to others, regardless whether other disorders may be present.

In *Foucha v. Louisiana,* 504 U.S. 71, 112 S.Ct. 1780, 118 L.Ed.2d 437 (1992), the Supreme Court struck down a Louisiana statute that allowed a person committed pursuant to an NGI plea to be denied release so long as he remained a danger to self or others, irrespective of his or her mental condition. While the defendant in *Foucha* also suffered from an antisocial personality disorder, no evidence as to the nature of that condition or its treatability was presented because it would have been irrelevant under the Louisiana statute.

In *Parrish v. Colorado,* 78 F.3d 1473 (10th Cir.1996), the United States Court of Appeals distinguished our statutory scheme from that involved in *Foucha v. Louisiana, supra,* and upheld the constitutionality of § 16–8–120(1), C.R.S. (1986 Repl.Vol. 8A), against an attack based upon *Foucha.* The court defined the mental state a person committed under an NGI plea must have as a legal concept, rather than a medical one and, on that basis, determined that the test for release from confinement is not whether such a person's mental state is medically definable, but whether he or she has a mental condition that fits the legal definition. The court further reasoned that, because § 16–8–120(1) makes the existence of a mental disease or an abnormal mental condition a necessary requirement for continued confinement, the Colorado statute survives the challenge that was presented in *Foucha, supra.*

Section 16–8–120(1) and § 16–8–120(3), use the same mental state, the presence of an abnormal mental condition, as the mental standard for determining release. Thus, we find the reasoning in *Parrish v. Colorado, supra,* persuasive here. And, because the application for release was made and ruled upon by the trial court prior to the adoption of § 16–8–102(4.7), C.R.S. (1995 Cum.Supp.), we do not here consider the effect of that statute.

We hold that so long as a person confined pursuant to a not guilty by reason of insanity plea remains under the effects of a treatable abnormal mental condition rendering him or her dangerous and such person continues to receive appropriate treatment for that abnormality, then that person may not be released from confinement under the Colorado statutes applicable here.

The order is affirmed.

JONES, J., concurs.

CRISWELL, J., specially concurs.

Judge CRISWELL specially concurring.

I fully concur with the result reached here by the majority. I write specially however, because of my prior participation as a member of the division in *People v. Parrish*, 879 P.2d 453 (Colo.App.1994), and the later addition to the pertinent statute of a general definition of "mental disease or defect." Section 16–8–102(4.7), C.R.S. (1995 Cum.Supp.).

The opinion in *Parrish* equated the term, "abnormal mental condition," as used in the substantive statute, § 16–8–120(4), C.R.S. (1986 Repl.Vol. 8A), with the term "mental disease or defect," as used in § 16–8–102(4), C.R.S. (1986 Repl.Vol. 8A), which defines the term, "ineligible for release." At the time that the *Parrish* opinion was issued, however, there was no general statutory definition of "mental disease or defect;" the only definition of this term was contained in § 16–8–102(2.7), C.R.S. (1986 Repl.Vol. 8A), which, by its specific terms, was limited to those instances in which the question was presented whether a defendant was suffering from an "impaired mental condition," so as to render the person incapable of forming the requisite specific intent. *See* § 16–8–103.5, C.R.S. (1986 Repl.Vol. 8A). *Parrish*, therefore, did not equate the "abnormal mental condition" referred to in the release statute, § 16–8–120(4), with this statutory definition.

As the majority opinion and the Tenth Circuit in *Parrish v. Colorado*, 78 F.3d 1473 (10th Cir.1996) recognize, all of these statutory terms, like the term, "insanity," incorporate legal, not medical, concepts. It is, therefore, irrelevant whether the statutory definitions of these terms are consistent with the medical profession's definitions. The question simply is: what condition must be shown to exist in order to render a person previously acquitted of a crime because of insanity ineligible to be released from his or her forced hospitalization.

In 1995, the General Assembly provided, for the first time, a *general* definition of the term, "mental disease or defect." Colo. Sess. Laws 1995, ch. 26, § 16–8–102(4.7) at 72. Under this statute, the term is defined as a "severely abnormal mental condition[ ] that grossly and demonstrably impair[s] a person's perceptions or understanding of reali-

ty," not attributable to the use of alcohol or other psychoactive substances. The term does not include "abnormality manifested only by repeated criminal or otherwise antisocial conduct." Section 16–8–102(4.7), C.R.S. (1995 Cum.Supp.)

In this same general definitional statute, the term "ineligible for release" is still said to mean that the defendant is suffering "from a mental disease or defect," § 16–8–102(4), C.R.S. (1986 Repl.Vol. 8A), and nothing in this latter sub-section suggests to me that this term carries a meaning different from the new definition in § 16–8–102(4.7). Section 16–8–102 does note that these definitions are to be applied, "unless the context otherwise requires."

However, § 16–8–120(4), C.R.S. (1995 Cum.Supp.) establishes a specific requirement for the release of a person charged with a crime allegedly occurring between July 1, 1983 and July 1, 1995. That requirement is: "That the defendant has no abnormal mental condition which would be likely to cause the defendant to be dangerous either to himself or herself or to others or to the community in the reasonably foreseeable future."

Because of the specific elements of the test required to be employed under § 16–8–120(4), I am convinced that, when the General Assembly used the term "abnormal mental condition," it did so deliberately and that it did not mean to require a showing that the defendant suffered from a "mental disease or defect" as defined under § 16–8–102(4.7), which requires proof of a *"severely"* abnormal condition and a *gross* impairment of the perception of reality.

I agree that such an interpretation of § 16–8–120(4) creates some conflict with the definition of "ineligible for release" under § 16–8–102(4). However, because this latter term is merely definitional, and is not to be applied if the context requires another meaning, and because § 16–8–120(4) is the specific, substantive, statute, the former definition must yield to the latter. *See Pima Financial Service Corp. v. Selby*, 820 P.2d 1124 (Colo.App.1991).

Here, for example, while all of the experts agreed that defendant suffered from an "ab-

normal mental condition," there was no proof that defendant's perception of reality was grossly impaired. If proof of such gross impairment is required, as it would be if it were concluded that the existence of the condition described in § 16–8–102(4.7) must be shown, we could not, based on this record, affirm the trial court's refusal to release defendant.

I am convinced, however, that the statute, properly construed, requires no such proof. It is sufficient under the statute if it is demonstrated that the detainee is suffering from an abnormal mental condition, albeit less severe than that described in § 16–8–102(4.7), that renders him dangerous.

Nor does this interpretation cause the statute to run afoul of the principle established in *Foucha v. Louisiana*, 504 U.S. 71, 112 S.Ct. 1780, 118 L.Ed.2d 437 (1992). There, the court invalidated a statute that allowed a person previously acquitted because of insanity to continue to be confined in a mental institution simply upon proof that that person continued to be a danger to himself or herself or to others; it was not necessary under that statute to prove either that the person was still "insane" or that he or she suffered from any mental disorder of any type. But, while the Supreme Court determined that continued hospitalization could be constitutionally justified only by proof of a continuing mental problem, it was not precise as to the nature of the disorder that was required, as the division in *Parrish* noted.

I conclude, therefore, that "abnormal mental condition" as used in § 16–8–120(3) refers to a condition that may not be classified by the medical profession as a "disease" or a "defect" and that may also not be a "disease or defect" under the statutory definition of those terms. Nevertheless, the existence of such less severe condition, which renders the person dangerous, makes the individual ineligible for release under the statute and satisfies the *Foucha* requirement, at least if, as here, the record supports the finding that such condition is treatable.