Earl Wesley SCHEIDT, Petitioner,

v.

Charles E. MEREDITH, Superintendent
of Colorado State Hospital,
Respondent.

Civ. A. No. C–1733.

United States District Court
D. Colorado.

Jan. 7, 1970.

Paul D. Rubner, and Sheldon W. Greene, Denver, Colo., for petitioner.

Duke W. Dunbar, Atty. Gen. of the State of Colorado, John P. Moore, Deputy Atty. Gen., and Eugene C. Cavaliere, Asst. Atty. Gen., Denver, Colo., for respondent.

## MEMORANDUM OPINION AND ORDER

WILLIAM E. DOYLE, District Judge.

This case is before the court on a petition for a writ of habeas corpus pursuant to 28 U.S.C.A. § 2254. Petitioner is a patient at the Colorado State Hospital in Pueblo, Colorado. He was committed to that institution on May 4, 1961, following a plea of not guilty by reason of insanity to six counts of burglary, conspiracy, larceny and receiving stolen goods, and a jury finding that petitioner was insane at the time of the acts charged. His commitment to the State Hospital was pursuant to 53 C.R.S. 39–8–1 *et seq.*

On August 26, 1964, respondent Meredith, in his capacity as Superintendent of the State Hospital, notified Denver District Court Judge Sherman Finesilver that in his opinion petitioner was no longer insane and was eligible for discharge pursuant to 63 C.R.S. 39–8–4(3). Petitioner was then transferred to the Colorado Psychopathic Hospital in Denver for examination as to his present legal sanity. Judge Finesilver further ordered that an independent examination of petitioner be conducted by two specialists in the field of mental disease.

A hearing on the question of petitioner's restoration to sanity was held before Judge Finesilver on December 4, 1964. Three psychiatrists who had examined petitioner testified at this hearing. All were of the opinion that petitioner was sane and could be released, but that some form of follow-up care and psychiatric observation or supervision should be established. Petitioner testified at the hearing that a probationary release would not be acceptable to him—he said that he would rather be returned to the State Hospital than be released on probation.[1] On December 18,

1. The Attorney General, in his Return To Order To Show Cause, alleges that petitioner's position was that he be granted an outright discharge or be returned to the State Hospital. The record reflects, however, that petitioner would have accepted out-patient treatment as a condition of release if such a condition were offered to him. Twice during the district court hearing petitioner stated that the type of probationary release he objected to was release on criminal probation. In answer to a question from the court petitioner said:

Yes, I have seen the type of probationary release that is given to the ex-

mental patients that return to the district court for restoration. This is the same type of probationary release with the same stipulations that is given to an inmate coming out of Canon City. Tr. pg. 37.

Later, in concluding a statement to the court, petitioner added:

Well, then, it would be my request to the court that, if I were to be placed upon *the same type of parole that a penitentiary inmate is placed upon*, that I be remanded to the custody of the State Hospital. Tr. pg. 38 (emphasis supplied.)

1964, Judge Finesilver denied petitioner's discharge or probationary release, found that petitioner had not satisfied the Court as to his sanity, and ordered that petitioner be remanded to the State Hospital. Pending appeal to the Colorado Supreme Court, petitioner escaped from the State Hospital and was away for two years. He claims that he made a good adjustment during this period; that he was earning in excess of $10,-000.00 per year in honest labor. He was taken into custody when he returned to Pueblo to visit his family. On Writ of Error the Colorado Supreme Court affirmed the District Court's judgment.

█ Petitioner filed the present petition on September 4, 1969, and a hearing was held in this court. Petitioner has exhausted his state remedies as required by 28 U.S.C.A. § 2254(b). It is true that the new Colorado statute [2] permits petitioner to reapply for his release at six month intervals. However, the questions at issue in a proceeding on such an application would be petitioner's mental condition; whether the Superintendent of the hospital is arbitrarily refusing to certify petitioner as sane; and whether petitioner is entitled to his release. 63 C.R.S. 39–8–4(13) (as amended) (Supp.1965). Since there is

every probability that the state courts will stand by their previous ruling, and since the hearing is limited to sanity and arbitrary refusal to release, it would appear that petitioner has effectively exhausted his available state remedies and is properly before this court. Miller v. Blalock, 356 F.2d 273 (4th Cir. 1966).

The issue presented here is whether a judgment which places one adjudged not guilty by reason of insanity on criminal probation or, on his refusal to accept such terms remands him to indefinite custody, violates his Fourteenth Amendment rights. Is such a commitment an invalid deprivation of liberty without due process?

At the December 4, 1964 hearing before the State District Court, there was uncontroverted psychiatric testimony that petitioner was sane. In fact, the court's conclusion that petitioner was not sane or entitled to probationary release could only have been grounded upon petitioner's refusal to accept probationary terms upon his release.

█ At our hearing Mr. John Yurko, Chief Probation Officer of the Denver District Court, testified that the conditions imposed upon a person who has

---

Clearly, it was criminal probation that petitioner was rejecting, and there is no indication that he would not have accepted a condition of psychiatric outpatient care. Indeed, when asked if he would seek treatment if he were given an outright discharge, petitioner said that he would:

Now I consider my previous mental illness or whatever qualities remain of that illness the same as an individual with a physical illness * * * If you had a bad heart, you would go to see a doctor, and have this checked. I intend to do the same thing about my mental illness. Tr. pg. 34.

The Judge finally asked petitioner whether if released he would not fulfill the provisions of probationary release. He replied:

Your Honor, the probationary release —I feel I must have equal opportunity to be a first-class citizen. This place is (sic) a stigma on me. Once I have

entered for a long time, it would impair my ability to function in society. I am fully acquainted with the conditions of the parole; I have come in contact with these in the past; but the conditions of the parole, with the exception not to commit another felony, all these are pursuits engaged in by every normal person. They are things which contribute greatly to my adjustment, my ability to live a normal life, to function as a fully qualified citizen. I can't be a second-rate citizen in a first-class society.

THE COURT: So your statement to the court is that you reaffirm your statement that a probationary release would not be acceptable to you, is that correct?

DEFENDANT SCHEIDT: That is correct, your Honor. Tr. pg. 45–46.

2. 63 C.R.S. 39–8–4(15) (as amended) (Supp.1965).

been granted probationary release under 63 C.R.S. 39-8-4 are, as a matter of practice, the same conditions imposed upon a convicted criminal who has been placed on probation. We conclude that the imposition of such conditions on one who has not been convicted of a crime is unconstitutional, and that petitioner could not be denied his release based on his refusal to accept these conditions.[3]

■ Petitioner was found not guilty of the crimes charged by reason of insanity. This means that he was not legally responsible for the acts committed. He was not therefore a convicted criminal. Berger v. People, 122 Colo. 367, 224 P.2d 228 (1950); Ingles v. People, 92 Colo. 518, 22 P.2d 1109 (1933). The judgment was not, it is true, a clean bill of health, but was a judgment of so-called limited responsibility. It is not to be denied that one so adjudged can be committed to a hospital for treatment and custody until he regains his "sanity." This is not, however, punishment and indeed the state may not constitutionally impose criminal sanctions against persons who have committed no crime. See Powell v. State of Texas, 392 U.S. 514, 533, 88 S.Ct. 2145, 2154-2155, 20 L.Ed. 2d 1254 (1968); Powell v. State of Texas, supra, 392 U.S. at 567, 88 S.Ct. at 2171 (dissenting opinion); cf. Robinson v. State of California, 370 U.S. 660, 82 S. Ct. 1417, 8 L.Ed.2d 758 (1962).

■ The purpose of modern criminal probation is said to be rehabilitative and educational,[4] yet such a program is designed for the guilty and not for those who are not guilty. An essential requirement is an adjudication of guilt. Then the imposition or execution of sentence is suspended and the violator is allowed to go into the community on strict terms and conditions. He is limited in his freedom of association, mobility and other activities. These limitations are imposed as a direct result of the probationer's having been *convicted* of some violation of the law. Although probation may not be *primarily* punitive in nature,[5] punitive aspects are clearly involved. Since a person may not, consistent with the Constitution, be punished when he has committed no crime (see Powell v. State of Texas, supra; cf. Robinson v. State of California, supra) it would be unconstitutional to impose criminal probation conditions on someone in petitioner's circumstances. Just as release on probation may not be weighted with terms and conditions having nothing to do with the purpose or policy of probation,[6] conditional release of a man who has been restored to sanity may not be conditioned on terms having no relation to his status.

■ The interests of the community and the individual are relevant to the granting of a conditional release. Thus, it would be clearly proper to require that petitioner accept psychiatric out-patient care or supervision. However, terms which were designed to regulate the activities of convicted criminals, and which are punitive in nature, cannot be imposed in a case such as this.

■ Finally, then, we conclude that it was not constitutionally permissible to remand the petitioner to indefinite custodial detention or until he would accept terms which are clearly invalid and not

---

3. 63 C.R.S. 39-8-4 referred to a conditional release as "probationary," and the district court, as was the practice, took the statute to mean criminal probation. We only hold that to so interpret the statute was to deprive petitioner of his Fourteenth Amendment rights.

4. Logan v. People for Use of Alamosa County, 138 Colo. 304, 332 P.2d 897 (1958).

5. Id. The statement in *Logan* that probation is not *primarily* punitive suggests that there is an element of punishment involved. See also Peterson v. Dunbar, 355 F.2d 800 (9th Cir. 1966), which suggests that probation is merely a form of punishment scaled down to fit the criminal, not merely the crime.

6. Logan v. People, *supra* note 4. See also Rubin, Weihofen, Edwards and Rosenzweig, The Law of Criminal Correction (1963).

responsive or relevant to the judgment of not guilty by reason of insanity.

On the basis of the above determination, we refer this cause to the Denver District Court with a request that it reconsider the case and restructure its judgment whereby if the petitioner has regained his sanity, he shall be released on conditions that he submit to out-patient treatment or other therapy.[7] Should the Court fail to take action within a reasonable time, thirty days e. g., petitioner may reapply to this Court for his release. The form of any such judgment which we enter need not be now considered. This matter will be held in abeyance for the present.

---

7. Such conditions are consistent with the new Colorado statute, which refers not to "probation," but to conditions which are conducive to "the best interests of the defendant and the community." 63 C.R.S. 39–8–4(6) (as amended) (Supp. 1965).