No. 13911

IN THE SUPREME COURT OF THE STATE OF MONTANA

1978

---

IN THE MATTER OF THE APPLICATION OF
JAMES W. ZION,

Petitioner,
for a Writ of Habeas Corpus to inquire into
the cause of Detention of RITA STRATTON,

-vs-

HARRY C. XANTHOPOULOS, Superintendent,
Warm Springs State Hospital,

Respondent.

---

ORIGINAL PROCEEDING:

Counsel of Record:

For Petitioner:

James Zion argued, Helena, Montana

For Respondent:

Hon. Mike Greely, Attorney General, Helena, Montana
Mary B. Troland argued, Assistant Attorney General, Helena,
Montana
Robert J. Brooks, County Attorney, Broadus, Montana

---

Submitted: September 20, 1978

Decided: OCT 1978

Filed:

Thomas J. Kearney
_____
Clerk

Mr. Justice Gene B. Daly delivered the Opinion of the Court.

James Zion, petitioner and attorney for Rita Straiton, filed a petition for a writ of habeas corpus to inquire into the detention of Straiton with this Court on August 3, 1977. Following a hearing on Zion's authority and standing to appear this Court remanded the cause to the District Court of the Sixteenth Judicial District sitting in Powder River County for findings of fact and conclusions of law as to the condition of Rita Straiton who had been committed to Warm Springs State Hospital (Warm Springs) in 1973 following her acquittal on a charge of murder on the ground of mental disease or defect excluding responsibility. Following a hearing on Straiton's condition the District Court ordered her release from Warm Springs with certain conditions. The case is now before this Court for review of conditions of release imposed by the District Court.

Subsequent to entering its findings and conclusions, the District Court allegedly granted ex parte a motion by the county attorney to assess medical and witness fees and costs against Straiton's estate. Although the District Court record on this matter was not transmitted to the Court, petitioner seeks a reversal of this order. Petitioner James W. Zion, the petitioner herein, has filed an additional petition, dated October 11, 1978, with the Court requesting immediate release of Straiton and the same is considered herein.

In 1973, Rita Straiton was committed to Warm Springs following her acquittal by reason of insanity on a charge of murdering her father. In 1977 she petitioned for release from custody. The District Court agreed that she was suitable

-2-

for release and imposed six conditions for her release "[t]o insure that the defendant's release and return to society does not trigger a regression which might make her a danger to herself or others." Among these conditions are the following to which petitioner objects:

> "(e) Defendant must be willing to accept supervision by the Parole Division of the Montana Department of Institutions for a period of not less than five (5) years following her release from the State Hospital at Warm Springs so as to insure the following:
>
> "1. Defendant does not change her place of residence without approval of the parole officer.
>
> "2. That the parole officer know defendant's place of residence and her place of employment at all times.
>
> "3. That defendant continue her consultations at the mental health facility and continue taking such medications as are prescribed.
>
> "4. That defendant continue to be employed and to have income so that she can pay her living expenses.
>
> "5. That defendant maintain her behavior so that she is not a danger to herself or to others.
>
> "6. That defendant abide by all of the conditions prescribed in her release order.
>
> "7. That defendant suffers from no regression in her mental condition which require that she be returned to the State Hospital at Warm Springs.
>
> "8. That defendant obey all municipal, state and federal laws.
>
> "9. That defendant comply with the rules and regulations of the Department of Institutions, Parole Division, and that she report regularly to her parole officer as required by him."

The determination of the propriety of the imposition of Parole Division supervision in this case depends on the evaluation of two factors: (a) Straiton's status as one acquitted of a crime by reason of insanity; and (b) the extent of the authority of the District Court to impose conditions on the release from Warm Springs of one acquitted of crime by reason of insanity.

Straiton was found not guilty of the crime charged by reason of insanity. This means she was not legally responsible for the act committed and she is not regarded as a convicted criminal. Scheidt v. Meredith (D. Colo. 1970), 307 F.Supp. 63, 65; State ex rel. Dorothea Dix Hospital v. Davis (1977), 292 N.C. 147, 232 S.E.2d 698, 703. By reason of her acquittal she became one of what has been described as an "exceptional class" of people held blameless and free from imprisonment for an act otherwise subject to penal sanctions. State v. Taylor (1971), 158 Mont. 323, 331, 491 P.2d 877, 881; State v. Carter (1973), 64 N.J. 382, 316 A.2d 449, 458.

The status of one entering this "exceptional class" was further described by Justice John Harrison in Taylor:

> ". . . [W]hen one enters this exceptional class, the reasonable and humane thing to do is to commit him to a mental hospital where he can undergo treatment which will, hopefully, enable him to return to society as a useful member, posing no threat to either his or the general public's safety. However, the public acquires a special interest in his confinement and release, which interest must be considered by the court. When consideration is being given to his release, that public interest must be weighed against his claimed right to be set free." 158 Mont. at 331, 491 P.2d at 881.

See also State v. Carter, supra, 316 A.2d at 459; In re Lee (1974), 46 A.D.2d 999, 362 N.Y.S. 635, 637.

Persons in this class are not regarded as criminal. This is further illustrated by the fact that all of the provisions governing release from Warm Springs after this kind of commitment are deemed "civil" in nature. See section 95-508(1), (3), R.C.M. 1947. She must prove that she may be safely released only by a preponderance of the evidence, section 95-508(3), not beyond a reasonable doubt as required in criminal proceedings. Cf. State v. Taylor, 158 Mont. at 333, 491 P.2d at 882 (opinion written before statute amended).

-4-

Section 95-508, R.C.M. 1947, governs the release from custody of persons acquitted of crime by reason of insanity. According to that statute the District Court which originally committed the person is charged with weighing the public interest in protection from dangerous persons against the defendant's claimed right to be free as described in Taylor. The District Court is given wide discretion to prescribe release "on conditions which the court determines to be necessary." Section 95-508(1),(3). This discretion is not unlimited and cannot encompass a condition which as applied to this person to be released would be unconstitutional. Furthermore, imposition of a condition designed for punishment or retribution is inapposite in dealing with an individual who has been acquitted of the crime charged. Hough v. United States (D.C. Cir. 1959), 271 F.2d 458, 462; State v. Carter, 316 A.2d at 456.

"Probation" for purposes of our criminal laws is defined in Montana's statutes as "the release by the court without imprisonment except as otherwise provided by law, of a defendant found guilty of a crime. . . " Section 95-3301(3), R.C.M. 1947. (Emphasis added.) "Parole" is defined as "the release to the community of a prisoner . . . prior to the expiration of his term." Section 95-3301(4), R.C.M. 1947. "Prisoner" in turn is defined as "a person sentenced by a district court to a term of confinement in the state prison." Section 95-2218(4), R.C.M. 1947.

Straiton, who has not been convicted of a crime and who was not sentenced to the state prison does not fall within either class of person to whom the criminal probation or parole provisions could apply. That such a person may not be constitutionally subject to such conditions is equally

-5-

clear. Scheidt v. Meredith, supra; Holderbaum v. Watkins (1975), 42 Ohio St. 2d 372, 328 N.E.2d 814, 815, aff'g 44 Ohio App. 2d 253, 337 N.E.2d 800.

In Scheidt, the federal district court described that which a court may do in regard to one in Straiton's place as to both the original commitment and subsequent conditional release:

> "Petitioner was found not guilty of the crimes charged by reason of insanity. . . The judgment was not, it is true, a clean bill of health, but was a judgment of so-called limited responsibility. It is not to be denied that one so adjudged can be committed to a hospital for treatment and custody until he regains his 'sanity.' This is not, however, punishment and indeed the state may not constitutionally impose criminal sanctions against persons who have committed no crime. See Powell v. State of Texas, 392 U.S. 514, 533, 88 S.Ct. 2145, 2154-2155, 20 L.Ed.2d 1254 (1968); Powell v. State of Texas, supra, 392 U.S. at 567, 88 S.Ct. at 2171 (dissenting opinion); cf. Robinson v. State of California, 370 U.S. 660, 82 S.Ct. 1417, 8 L.Ed.2d 758 (1962).

> ". . .

> "The interests of the community and the individual are relevant to the granting of a conditional release. Thus, it would be clearly proper to require that petitioner accept psychiatric outpatient care or supervision. However, terms which were designed to regulate the activities of convicted criminals, and which are punitive in nature, cannot be imposed in a case such as this." 307 F.Supp. at 66.

We concur in this view.

In Holderbaum, the Ohio Court of Appeals summed up the situation in which Straiton finds herself:

> "We then have as the petitioner an adult who has been found sane pursuant to a writ of habeas corpus, who has not been convicted of any crime or is not suffering under any disability under the law, and who is entitled to his release forthwith from the Lima State Hospital. His legal situation is equivalent to any other sane adult not convicted of any crime and not suffering under any legal disability." 337 N.E.2d at 802.

-6-

The intermediate court in Ohio went on to declare that any condition placed on the defendant's release would deny him equal protection of the laws, deprive him of liberty without due process, and deprive him of the right to enjoy liberty and therefore held the conditional release statute unconstitutional. On appeal the Ohio Supreme Court felt this declaration of unconstitutionality was unnecessary and to that extent overruled the Court of Appeals. Holderbaum, supra, 328 N.E.2d at 815. The petitioner here agrees that conditional release is proper and is not challenging the conditional release statute. Therefore, this Court need not reach the question of the constitutionality of section 95-508. Nevertheless the Court does disapprove the imposition of improper supervision by the Parole Division as a condition of the release of Straiton.

The State argues that the imposition of probation as a condition to Straiton's release is not designed to be punitive but is merely designed as supervisory to insure her continued mental stability. On reading the probation condition as imposed by the District Court we are unable to discern how several of the provisions differ substantially from the type of conditions imposed on a convicted criminal on probation. For example Straiton would not be able to change her address without approval of her parole officer and would have to comply with the rules and regulations of the Department of Institutions' Parole Division, which presumably are drafted with convicted criminal probationers and parolees in mind. These are impermissible infringements on the liberty of one who has not been convicted of a crime and who is not now a danger to herself or others. As stated in Scheidt, 307 F.Supp. at 66:

"The purpose of modern criminal probation is said to be rehabilitative and educational, yet such a program is designed for the guilty and not for those who are not guilty. An essential requirement is an adjudication of guilt. Then the imposition or execution of sentence is suspended and the violator is allowed to go into the community on strict terms and conditions. He is limited in his freedom of association, mobility and other activities. These limitations are imposed as a direct result of the probationer's having been convicted of some violation of the law. Although probation may not be primarily punitive in nature, punitive aspects are clearly involved. Since a person may not, consistent with the Constitution, be punished when he has committed no crime (see Powell v. State of Texas, supra; cf. Robinson v. State of California, supra) it would be unconstitutional to impose criminal probation conditions on someone in petitioner's circumstances. Just as release on probation may not be weighted with terms and conditions having nothing to do with the purpose or policy of probation, conditional release of a man who has been restored to sanity may not be conditioned on terms having no relation to his status." (Emphasis added.)

This excerpt emphasizes the impropriety of imposing probation conditions of a criminal or punitive nature. The imposition of probation conditions having the tone or effect of being punitive is therefore expressly disapproved.

Because we feel that certain of the conditions contained within the probation condition as imposed by the District Court do have this tone or effect we disapprove as imposed the condition that Straiton submit to supervision by the Parole Division.

Nevertheless, because of the facts of this and similar cases which might arise in the future, we are reluctant to declare flatly for all purposes that some form of overseeing by the Parole Division would be unacceptable as a condition of release of an insanity acquitee from Warm Springs. Besides the express authority contained in section 95-508 for the District Court to impose such conditions as it deems necessary we are able to find support in the cases for permitting such supervision. In State v. Carter, supra, for

example, the New Jersey Supreme Court stated what we consider to be an acceptable form of post-release overseeing by a probation officer of one in Straiton's position:

> "Throughout the period of conditional release, it is imperative that the trial court maintain frequent contact with the patient and supervising psychiatrists. To facilitate this burden of responsibility, the trial judge should require regular and continuous reports to a court appointed probation officer both from the psychiatrists to whom the patient is reporting and from the patient himself. The court must retain jurisdiction over the proceeding. This retention of jurisdiction is essential to enable the authorities to return the patient to the state hospital for psychiatric care immediately upon being notified that some problem has arisen which jeopardizes the safety and well being of the patient or those around him. The ability of the trial judge to immediately recall the patient in a summary fashion is crucial to the court's ability to protect the public from harm." 316 A.2d at 463. (Emphasis added.)

This statement accurately summarizes our view of the proper balancing of the competing interests at stake in this case.

One other reason may be cited for our reluctance to forbid the use of Parole Division personnel as a possible supervising agency in these cases. If we did so, we may be denying to some residents the possibility of release simply because the District Court is unable to find any other satisfactory local agent to oversee the reintroduction of the patient into community life.

The District Court in this case, charged as described above with balancing the public's interest in safety against Straiton's claimed right to be free, has made several findings of fact which indicate a certain "nervousness" on the court's part regarding Straiton's current mental health.

Specifically the District Court in different findings observed that during her testimony at the hearing on the petition Straiton "gave the appearance of being tense and gave the impression that she might explode at any time"

although she did maintain control. The court also quoted one of the examining psychiatrists recommending her release as saying that Straiton "demonstrates a marked disregard for the value of any medication, and indirectly indicated that in all probability she would not continue taking medication after leaving the hospital." Cf. Scheidt, 307 F.Supp. at 6465 n. 1 (defendant willing to utilize psychiatric out-patient services and to continue treatment). The court further mentioned the absence of any testimony to establish how defendant's behavior would be affected if she should fail to take her medication even though the court placed great weight on the value of the medication in stabilizing Straiton's emotions.

In summary the District Court found:

"Defendant is mentally ill, but her mental condition does not make her a present danger to herself or to others. The improvement in defendant's mental condition over what it was at the time of her original confinement is probably the result of her taking of the tranquilizing drug, Thorazine. Defendant's ability to maintain social control over her behavior will depend on the degree of stress imposed upon her and upon her continued use of the tranquilizing drug. Since she is not a present danger to herself or to others, she is entitled to be released. However, her release must be strictly supervised and controlled to insure that she does not regress to her previous mental state.

"Defendant should not be released until adequate provision is made for supervision and control during the time of her release."

On the basis of these findings the District Court agreed to the release of Straiton under certain conditions designed to provide the strict supervision and control the court felt necessary. Today we have disapproved, as imposed, an integral part of these release conditions—supervision by the Parole Division. At oral argument counsel for Straiton indicated that a suitable alternative for strict supervision

-10-

by the Parole Division in the form of direct supervision by a private psychiatrist had been arranged. Whether this alternative is acceptable to the District Court we are not in a position to say. Neither are we charged under the release statutes with making that determination. Therefore, we remand the case to the District Court for further proceedings on the narrow issues of whether suitably strict supervision is possible under this alternative and what limited role the Parole Division may play as defined in this opinion to insure that strict supervision is maintained.

On remand, there is one other matter which should be corrected in the subsequent release order. By stipulation of the State, it is agreed that the condition imposed upon Straiton's release in regard to her securing full-time employment should be modified to include the alternative of schooling or job training. This condition should be rewritten to reflect this agreement between the parties.

The petitioner brings one other matter to our attention: the alleged ex parte assessment of witness fees and costs against Straiton by the District Court. This issue is not properly before this Court at this time as no record of the District Court's actions on this matter is before us. See Rule 9, M.R.App.Civ.P. We expressly reserve any judgment on this issue.

This application is remanded to the District Court for further proceedings consistent with this opinion.

_____
Justice

We Concur:

_____
                 Chief Justice

_____

_____

_____
     Justices