**The PEOPLE of the State of Colorado, Plaintiff–Appellee,**

v.

**Irwin H. GARLOTTE, Defendant– Appellant.**

No. 95CA0667.

Colorado Court of Appeals, Div. V.

July 3, 1997.

Rehearing Denied Aug. 7, 1997.

---

Gale A. Norton, Attorney General, Stephen K. ErkenBrack, Chief Deputy Attorney General, Timothy M. Tymkovich, Solicitor General, Matthew S. Holman, Assistant Attorney General, Denver, for Plaintiff–Appellee.

David F. Vela, Public Defender, Katherine Brien, Deputy State Public Defender, Denver, for Defendant–Appellant.

Opinion by Judge ROTHENBERG.

Defendant, Irwin H. Garlotte, appeals the trial court order revoking his conditional release and ordering his return to the Colorado State Hospital. He contends that §§ 16–8–115.5, C.R.S. (1996 Cum.Supp.) and 16–8–102(4.5), C.R.S. (1986 Repl.Vol. 8A) are unconstitutional insofar as they allow revocation of a conditional release and the recommitment of an insanity acquittee based solely on the violation of a condition of release. We reject his contention but remand for further proceedings.

As a result of an October 1984 incident, defendant was charged with attempted first degree murder, criminal mischief, and felony menacing. The evidence showed that, at the time of the commission of the crime, he was delusional and had shot a perfect stranger, a visiting nurse, whom he believed was a member of a devil cult that was harassing him.

In January 1985, following a bench trial, he was found not guilty by reason of insanity.

Following his acquittal, he was committed to the state hospital until such time as he was eligible for release. Although that was his first psychiatric hospitalization, reports contained in the record indicate defendant had suffered from psychotic symptoms for several years before that admission, and they listed his diagnosis as "Schizophrenia, paranoid type, chronic."

After defendant spent five years in the state hospital, the trial court granted the hospital's request to place him on conditional release pursuant to § 16–8–120(3), C.R.S. (1986 Repl.Vol. 8A). In doing so, the court incorporated the recommendation of a staff psychiatrist which stated that, because defendant no longer suffered from an abnormal mental condition that would be likely to cause him to be dangerous in the reasonably foreseeable future, he was eligible for conditional release.

Defendant's release was conditioned on terms contained in the psychiatrist's letter and incorporated into the court's order. As pertinent here, those conditions, which were to remain in effect for one year unless modified or terminated by further court order, required defendant to live in Biloxi, Mississippi; to participate in outpatient services; to refrain from using alcohol and nonprescribed drugs; and to submit to random urine screens.

The record includes a continuity of care report submitted by the forensic psychiatrists emphasizing defendant's need for continued treatment and supervision while on release. It states, *inter alia*, that:

> [W]e felt that *[defendant's] stability was the result of* the excellent *treatment and supervision* provided by the mental health center and therefore recommended that he be continued on Conditional Release. (emphasis added)

Approximately two years later, the People petitioned to revoke defendant's conditional release. The court denied the petition, after finding defendant had not violated any conditions of his release. However, it ordered new conditions which were to continue for one year.

In June 1994, the People again moved to revoke defendant's conditional release, asserting he had violated the terms of his release by submitting three urine screens that tested positive for drugs in September 1993, March 1994, and April 1994; by failing to submit to random urinalysis; and by providing only five drug screens during the preceding year.

The People alleged that, because defendant had violated the conditions of his conditional release, he was ineligible to remain on conditional release. Another continuity of care report from the forensic psychiatrists states that:

> The fact that [defendant] is abusing substances cannot be tolerated. It was his substance abuse which led to the instant offense resulting in his Not Guilty by Reason of Insanity commitment in the first place.

At the revocation hearing, the court admitted evidence showing defendant continued to suffer from an abnormal mental condition and constituted a danger to himself or others. Specifically, the People presented a psychiatrist from the state hospital who testified that: (1) he had personally evaluated defendant and had followed defendant's progress while on conditional release; (2) he also had reviewed reports from the outpatient clinic in Biloxi, Mississippi, where defendant had reported for medication and testing; (3) in a recent incident at the Mississippi health clinic, defendant had walked in and pretended to shoot people; (4) defendant also had tested positive for illegal drugs in three urine screens and had admitted using alcohol; (5) defendant had failed regularly to submit monthly urine screens; (6) defendant's use of street drugs was intimately connected with the recurrence of his psychotic symptoms; and (7) during the preceding five years in which defendant had been on conditional release, he had suffered from the same kind of delusional thinking as he manifested when he shot the nurse. The psychiatrist gave his opinion that, because of defendant's delusional thinking and failure to abstain from nonprescription drugs and/or alcohol, his mental illness had again caused him to be a danger

to others, and that he was ineligible to remain on conditional release.

Defendant objected to the admission of any evidence of his mental illness and dangerousness on the basis that the People had failed to include such allegations in their motion for revocation, thus denying him fair notice of these potential grounds for revocation. Also, because the People's motion had cited only defendant's alleged violations of his release conditions, defendant claimed he had suffered prejudice in his ability to respond to any other ground for revocation.

The trial court agreed and, after admitting all of the People's evidence, it refused to make findings about defendant's mental condition or dangerousness. It found instead that defendant had violated two of the terms of his conditional release by failing to submit to monthly urine screens and by submitting three positive urine screens. Based solely on those violations, the court revoked defendant's conditional release and remanded him to the state hospital.

## I.

■ Defendant contends the trial court erred in recommitting him to the state hospital without finding both that he was suffering from an abnormal mental condition and that he was a danger to himself or others. Relying on *Foucha v. Louisiana*, 504 U.S. 71, 112 S.Ct. 1780, 118 L.Ed.2d 437 (1992), he asserts that §§ 16–8–115.5 and 16–8–102(4.5) violate the due process guarantees of the Fourteenth Amendment and Colo. Const. art. II, § 25, insofar as they authorize revocation of his conditional release based solely on non-compliance with the terms of that release. We disagree.

### A. *Foucha v. Louisiana*

The defendant in *Foucha* was charged with aggravated burglary and illegal discharge of a firearm, but was found not guilty by reason of insanity and was ordered confined in a state psychiatric hospital. He eventually sought release, and following a mental evaluation, a panel of three doctors concluded he had recovered from the drug induced psychosis from which he had suffered upon commit-

ment, and he no longer suffered from a mental illness. The evidence showed Foucha was in "good shape" mentally except for an anti-social personality.

Nevertheless, because the doctors believed he was still dangerous and because the Louisiana statutory scheme then governing the release of insanity acquittees permitted continued confinement if the acquittee either was mentally ill *or* was still dangerous, Foucha was committed indefinitely.

The United States Supreme Court struck down the Louisiana release statute as violative of due process because it allowed insanity acquittees like Foucha to be recommitted to mental institutions based solely on their dangerousness, even though they no longer suffered from any mental illness. The Court held that due process requires both mental illness and dangerousness in order to extend the commitment.

The Supreme Court emphasized that the involuntary confinement in a mental institution of an insanity acquittee such as Foucha implicates both substantive and procedural due process concerns:

Due process requires that the nature of the commitment bear some reasonable relation to the purpose for which the individual is committed.... Here, according to the testimony given at the hearing in the trial court, Foucha is not suffering from a mental disease or illness. If he is to be held, he should not be held as a mentally ill person....

Second, if Foucha can no longer be held as an insanity acquittee in a mental hospital, he is entitled to constitutionally adequate procedures to establish the grounds for his confinement....

Third, 'the Due Process Clause contains a substantive component that bars certain arbitrary, wrongful governmental actions 'regardless of the fairness of the procedures used to implement them''.... 'It is clear that commitment for any purpose constitutes a significant deprivation of liberty that requires due process protection'.... We have always been careful not to 'minimize the importance and fundamental nature' of the individual's right to liberty....

*Foucha v. Louisiana, supra,* 504 U.S. at 79–80, 112 S.Ct. at 1785, 118 L.Ed.2d at 447–48.

Due process protects individuals against two types of governmental action. Substantive due process prohibits the government from engaging in conduct that shocks the conscience or interferes with rights implicit in the concept of ordered liberty. *United States v. Salerno,* 481 U.S. 739, 107 S.Ct. 2095, 95 L.Ed.2d 697 (1987). It forbids the government from infringing upon certain fundamental liberty interests, no matter what process is afforded, unless the infringement is narrowly tailored to serve a compelling state interest. *Reno v. Flores,* 507 U.S. 292, 113 S.Ct. 1439, 123 L.Ed.2d 1 (1993).

The government's conduct in restraining individuals' freedom to act on their own behalf through institutionalization is a deprivation of liberty and triggers substantive due process protections. *See DeShaney v. Winnebago County Department of Social Services,* 489 U.S. 189, 109 S.Ct. 998, 103 L.Ed.2d 249 (1989); *see also Youngberg v. Romeo,* 457 U.S. 307, 102 S.Ct. 2452, 73 L.Ed.2d 28 (1982). There must be a sufficiently compelling governmental interest to justify such action, usually a punitive interest in imprisoning the convicted criminal or a regulatory interest in forestalling danger to the community. *See United States v. Salerno, supra; see also Reno v. Flores, supra* (O'Connor, J., concurring).

Nevertheless, the involuntary confinement of a limited class of dangerous, mentally ill persons is not contrary to the concept of ordered liberty. *Kansas v. Hendricks,* 521 U.S. 346, 117 S.Ct. 2072, 138 L.Ed.2d 501 (1997) (Kansas' Sexually Violent Predator Act, which allowed indefinite civil commitment of offenders, did not violate substantive due process).

Procedural due process involves the manner in which state action occurs and requires notice and a fair opportunity to be heard. *Mathews v. Eldridge,* 424 U.S. 319, 335, 96 S.Ct. 893, 903, 47 L.Ed.2d 18 (1976). Due process is a flexible standard which recognizes that not all situations calling for procedural safeguards require the same procedure. *Morrissey v. Brewer,* 408 U.S. 471, 92 S.Ct. 2593, 33 L.Ed.2d 484 (1972); *People v. Chavez,* 629 P.2d 1040 (Colo.1981).

### B. Colorado Release Statutes

A plea of not guilty by reason of insanity is in the nature of confession and avoidance because the defendant admits the criminal acts charged, but denies culpability. *People v. Chavez, supra.* Thus, defendants found not guilty by reason of insanity are not innocent of the acts constituting the charged crimes, but they are relieved of criminal responsibility for their conduct. Section 18–1–802, C.R.S. (1986 Repl.Vol. 8B).

An acquittal by reason of insanity supports an inference of continuing mental illness and dangerousness, and following such a verdict, defendants are subject to automatic commitment to a psychiatric facility. Defendants bear the burden of proving their entitlement to release. *See People v. Chavez, supra; see also Jones v. United States,* 463 U.S. 354, 366, 103 S.Ct. 3043, 3050, 77 L.Ed.2d 694, 706 (1983) ("It comports with common sense to conclude that someone whose mental illness was sufficient to lead him to commit a criminal act is likely to remain ill and in need of treatment.").

Colorado law has specific procedures for the release of insanity acquittees. Under § 16–8–115(3)(a), C.R.S. (1986 Repl.Vol. 8A), if the committing court finds an insanity acquittee is eligible for release:

> [T]he court may impose such terms and conditions as the court determines are in the best interest of the defendant and the community.... If the court ... finds the defendant ineligible for release the court shall recommit the defendant.

*Cf.* § 16–8–115(3)(a), C.R.S. (1996 Cum. Supp.) (amended version).

The relevant standard for determining when defendants are eligible for conditional release is:

> 'That the defendant has no abnormal mental condition which would be likely to cause him to be dangerous either to himself or others or to the community in the reasonably foreseeable future, and is capable of

distinguishing right from wrong and has substantial capacity to conform his conduct to requirements of law".

Section 16–8–120(3).

Defendants are "ineligible for release" when:

> [T]he defendant is suffering from a mental disease or defect which is likely to cause him to be dangerous to himself, to others, or to the community in the reasonably foreseeable future, if he is permitted to remain at liberty.

Section 16–8–102(4), C.R.S. (1986 Repl.Vol. 8A).

As pertinent here, the term "mental disease or defect" has been defined in a related context to include:

> [O]nly those severely abnormal mental conditions which grossly and demonstrably impair a person's perception or understanding of reality and which are not attributable to the voluntary ingestion of alcohol or any other psychoactive substance; except that it does not include an abnormality manifested only by repeated criminal or otherwise antisocial conduct.

Section § 16–8–102(2.7), C.R.S. (1986 Repl. Vol. 8A); cf. § 16–8–102(4.7), C.R.S. (1996 Cum.Supp.) (recodifying identical definition); *People v. Jones*, 935 P.2d 28 (Colo.App.1996).

The *Foucha* issue arose in *People v. Parrish*, 879 P.2d 453 (Colo.App.1994), in the context of Colorado's release statutes. Although the statutes governing release after an acquittal by reason of insanity differ from the revocation of conditional release statutes challenged here, *Parrish* nevertheless is instructive.

Parrish was found insane, was committed, and later moved for immediate release from the state hospital. A division of this court rejected his contention that *Foucha* mandated his release, concluding that, because the Colorado statutes governing release of insanity acquittees require a finding of abnormal mental condition *and* dangerousness in order for a court to order continued confinement, our release statutes do not suffer the same defect as the statutes at issue in *Foucha*.

**C. Revocation of Conditional Release**

Defendants who are granted conditional release remain under supervision. While they are free from the restraints of commitment, they are subject to certain court-imposed conditions, reporting requirements, and other restrictions. See § 16–8–115(3), C.R.S. (1986 Repl Vol. 8A); cf. § 16–8–115(3), C.R.S. (1996 Cum.Supp.) (amended version).

Pursuant to § 16–8–115.5(8), C.R.S. (1996 Cum.Supp.), a defendant's conditional release may be revoked if the committing court finds by a preponderance of the evidence that the defendant has become "ineligible to remain on conditional release." Cf. § 16–8–115.5(8), C.R.S. (1986 Repl.Vol. 8A) (prior codification of provision). The People bear the burden of proof on this question.

Under § 16–8–102(4.5), a defendant is "ineligible to remain on conditional release" if:

> [T]he defendant has violated one or more conditions in his release, or the defendant is suffering from a mental disease or defect which is likely to cause him to be dangerous to himself, to others, or to the community in the reasonably foreseeable future, if he is permitted to remain on conditional release.

Thus, under this statute, revocation of a conditional release is permitted, based on either: (1) a finding that defendant violated the terms of conditional release *or* (2) a finding that defendant is both mentally ill and dangerous.

Procedural safeguards exist in the Colorado insanity statutes which allow defendants, after their conditional release is revoked, to demonstrate they are again eligible for release. Defendants must show they are no longer mentally ill or dangerous. See §§ 16–8–115, C.R.S. (1986 Repl.Vol. 8A); 16–8–120, C.R.S. (1986 Repl.Vol. 8A). Cf. *Kansas v. Hendricks, supra* (discussing analogous procedural safeguards present in Kansas statute allowing for civil commitment of sexual offenders).

Importantly, defendant here is not challenging the propriety of the trial court's initial order granting him conditional, rather than unconditional, release. Nor is he chal-

lenging the particular conditions imposed. Rather, he asserts that revocation of his conditional release cannot constitutionally be based solely on the violation of a condition without additional findings of a mental illness and dangerousness. We are not persuaded.

In *People v. McCoy,* 821 P.2d 873 (Colo. App.1991), which was decided before the Supreme Court's decision in *Foucha* was announced, a division of this court confronted a factual situation similar to the one at issue here. There, as here, an insanity acquittee who had been released conditionally from confinement was recommitted based solely on a finding that he had violated conditions of his release, and asserted error on that basis. Also, as in this case, the evidence in *McCoy* showed that the defendant continued to suffer from an abnormal mental condition at the time of his release, and that legitimate conditions were needed to stabilize and to treat his mental condition.

The panel affirmed the order of revocation without addressing the defendant's constitutional objections to the procedure, observing that release conditions "presumably are imposed to eliminate or reduce the risk of future dangerous conduct on the part of the defendant." *People v. McCoy, supra,* 821 P.2d at 875. In upholding the defendant's revocation, the *McCoy* court also emphasized the relationship between the condition in question and the need for preventing future dangerousness. It then concluded that: "[T]he conditions imposed bore a substantial relation to defendant and were tailored to serve the best interests of both defendant and the community." *People v. McCoy, supra,* 821 P.2d at 876.

A key aspect of the *McCoy* holding is the fact that the conditions imposed on defendant and violated by him were not peripheral to his mental condition and dangerousness. They were necessary and related to the goal of keeping him on conditional release by managing his mental illness and protecting the public.

Contrary to defendant's contention, *McCoy* has not been overruled by *Foucha.* We conclude that *McCoy* is consistent with *Foucha* and with a long line of earlier cases constru-

ing the Colorado standards for conditional release and revocation.

In *Scheidt v. Meredith,* 307 F.Supp. 63 (D.Colo.1970), the defendant had been acquitted by reason of insanity and committed to the state hospital. Three years later, the hospital notified the committing court, a state district court, that defendant was no longer insane and was eligible for discharge. However, the court refused to release defendant unless he agreed to a type of probation identical to that typically used in criminal cases.

The defendant in *Scheidt* filed a habeas corpus petition in federal district court challenging the then-applicable Colorado conditional release statutes, and maintaining that this represented a form of punishment which was impermissible because he had been found not guilty by reason of insanity. The federal district court agreed and held that the imposition of such punitive conditions on one who has not been convicted of a crime is unconstitutional:

Just as release on probation may not be weighted with terms and conditions having nothing to do with the purpose or policy of probation, *conditional release of a [person] who has been restored to sanity may not be conditioned on terms having no relation to his [or her] status.*

The interests of the community and the individual are relevant to the granting of conditional release. Thus, it would be clearly proper to require that petitioner accept psychiatric out-patient care or supervision....

*Scheidt v. Meredith, supra,* 307 F.Supp. at 66 (emphasis added).

In *Campbell v. District Ct.,* 195 Colo. 304, 577 P.2d 1096 (1978), our supreme court applied the *Scheidt* criteria to conditional releases of insanity acquittees. There, Campbell was released conditionally, but later was recommitted because he had possessed a firearm in violation of his release conditions. Relying on *Scheidt,* he claimed that the terms of his release were, in essence, conditions for criminal probation.

The court rejected his argument. It held that the condition in issue, barring possession of firearms, was valid because there was a

nexus between the condition and the offense leading to defendant's commitment.

A review of the ... conditions imposed upon the petitioner's release by the ... court reveals that each condition *bears a substantial relation to the petitioner and is tailored to serve the best interests of both the petitioner and the community* in which he will be released.... The only condition imposed upon the petitioner's release which is commonly imposed upon criminal probation is the prohibition relating to the possession of firearms, *a condition directly related to the abnormal and highly dangerous behavior which resulted in the petitioner's initial commitment.* The prohibition against the possession of firearms is not the type of restriction which will detract from the petitioner's ability to adjust to society or which will seriously affect his ability to lead a normal life. The conditions, in this case, effected a reasonable accommodation between the petitioner's freedom and the community's interest in being protected from one who has demonstrated by prior acts that they present some danger to society.

The ... court's determination that the petitioner's release should be conditioned on the prohibition ... of firearms was, therefore, not in excess of its jurisdiction and does not evidence an abuse of discretion. A release condition of this nature is not unconstitutional if it bears *a relationship to the particular individual seeking release and is in the best interest of the defendant and the community.*

*Campbell v. District Ct., supra,* 195 Colo. at 307–08, 577 P.2d at 1098–99 (emphasis added). *See also People v. Giles,* 192 Colo. 240, 247, 557 P.2d 408, 413 (1976) ("[w]here conditional release is appropriate, the terms and conditions must be tailor-made by the court to fit the individual case.").

*Scheidt* and *Campbell* involved the question whether criminal probationary terms may be imposed as conditions for an insanity acquittee's release. However, the underlying due process concern in those cases was essentially the same as that addressed in *Foucha:* Whether the "nature of the commitment bear[s] some reasonable relation to the

purpose for which the individual is committed." *Foucha v. Louisiana, supra,* 504 U.S. at 79, 112 S.Ct. at 1785, 118 L.Ed.2d at 447.

▮ *Scheidt, Campbell,* and *McCoy* upheld release conditions so long as they had a substantial relationship with and were tailored to the defendant's particular mental disease or defect. In formulating release conditions, a court must balance the defendant's best interests with the community's need for safety. In *Foucha,* the Court struck down a release statute that did not do so, and permitted the commitment of an individual indefinitely solely because he was dangerous. *See also Kansas v. Hendricks, supra.*

These decisions recognize that certain defendants may not safely be unconditionally released. However, they may be conditionally released safely because, *when they are in compliance with relevant conditions,* their abnormal mental conditions are unlikely to result in dangerousness.

▮ Due process does not require courts to ignore compelling evidence that violent symptoms arising from a defendant's mental illness may be resurfacing as a result of defendant's noncompliance with a reasonable condition, such as the prohibition against nonprescription drugs or alcohol. *See Campbell v. District Ct., supra.* Nor may mental health professionals ignore or minimize a potentially dangerous act, as occurred here when Garlotte pretended to shoot people in the Biloxi mental health clinic. *See Perreira v. State,* 768 P.2d 1198 (Colo.1989) (mental health professionals have duty to take reasonable precautions to protect potential victims from future violent conduct by released mental patient).

Therefore, we hold that an insanity acquittee's conditional release may be revoked under §§ 16–8–115.5 and 16–8–102(4.5) solely because a release condition has been violated without infringing upon due process, provided that the condition violated bears a substantial relationship to the prevention of recurring mental illness or the management of an insanity acquittee's existing mental illness, and to the prevention of future dangerousness arising from the mental illness. *See*

*Aguilar v. People,* 886 P.2d 725 (Colo.1994) (in interpreting statute, we use construction that preserves its constitutionality if not contrary to the General Assembly's intent). We further conclude that, so construed, Colorado's statutory scheme governing the revocation of conditional release is reconcilable with *Foucha.*

The People have the burden of proving that the condition violated, and on which revocation of the conditional release is based, is substantially related to the abnormal and dangerous behavior which resulted in the initial commitment; that such condition bears a substantial relation to the defendant's abnormal mental condition and propensity toward dangerousness; and that it is tailored to serve the best interests of both the defendant and the community. *See Campbell v. District Ct., supra; People v. McCoy, supra.*

Whether the People have met the burden of proving by a preponderance of the evidence that the condition violated was sufficiently related to these goals is a factual determination for the committing court based on the totality of the evidence.

Here, the People's evidence at the revocation hearing showed a nexus between the conditions requiring that defendant abstain from drugs and alcohol and his ability to remain on conditional release without recurrence of the dangerous symptoms arising from his chronic mental illness. The state psychiatrist testified that defendant's mental illness and propensity toward dangerous behavior were exacerbated by his use of alcohol and illicit drugs. And, as noted in defendant's continuity of care report, "[i]t was his substance abuse which led to the instant offense resulting in his ... commitment in the first place." Testimony also showed, and the trial court found, that defendant had violated two terms of his conditional release concerning drug testing.

Defendant's earlier acquittal by reason of insanity does not erase the fact that he almost killed another person and that he was found to suffer from a form of chronic paranoid schizophrenia, unlike the temporary or drug-induced form of mental illness at issue

in *Foucha.* *See People v. Chavez, supra.* Although the trial court's order finding defendant eligible for conditional release stated he no longer suffered from an abnormal mental condition that would be *likely to cause him to be dangerous in the reasonably foreseeable future,* the psychiatrists' reports on which the court relied do not suggest he had "recovered" from his chronic mental disease. They state that his abnormal mental condition had been stabilized by treatment.

Thus, the risks that the violent symptoms arising from defendant's chronic paranoid schizophrenia would recur, and the corresponding threat of his future dangerousness, were discernably higher in this situation than they were in *Foucha.* *See also People v. Chavez, supra,* 629 P.2d at 1048 (recognizing that "mental illness for the most part is a long lasting phenomenon."). *See generally* American Psychiatric Ass'n, *Diagnostic & Statistical Manual of Mental Disorders* 282 (4th ed. 1994) (complete remission of schizophrenia is uncommon). *Cf. Kansas v. Hendricks, supra.*

Nevertheless, we conclude remand is necessary because, despite the prosecution's evidence of defendant's mental illness and dangerousness, he did not have a full and fair opportunity to present his evidence regarding these issues. Further findings also are necessary to determine whether revocation of the conditional release was justified under §§ 16–8–115.5 and 16–8–102(4.5). On remand, the court may take such evidence and hold such hearings as it deems necessary and just.

## II.

Defendant also asserts that the conditions on which the People relied and which the trial court accepted had expired before defendant's violations. However, this issue was not raised during the recommitment hearings and the record does not permit us to resolve this issue as a matter of law. Hence, we will not consider it for the first time on appeal. For the same reason, we do not address the People's contention that defendant waived this argument. If the issue is properly raised on remand, the trial

court should determine whether the conditions which the court found defendant had violated were in effect at the time of the violations.

Defendant's remaining contentions of error either are moot or are without merit. Therefore, we do not address them.

The cause is remanded for further proceedings in accordance with the views expressed in this opinion. The revocation of defendant's release shall remain in effect until remand proceedings are completed.

DAVIDSON, J., concurs.

ROY, J., dissents.

Judge ROY dissenting.

I respectfully dissent.

On January 14, 1985, defendant was found not guilty by reason of insanity on charges of attempted first degree murder, criminal mischief, and felony menacing, all occurring on October 4, 1984. Defendant was committed to the State Hospital until such time as he was eligible for release.

"Eligible for release" meant in 1985, and means today, as follows:

As to any person charged with any crime allegedly committed on or after July 1, 1983, the test for determination of a defendant's sanity for release from commitment, or his eligibility for conditional release, shall be: *'That the defendant has no abnormal mental condition which would be likely to cause him to be dangerous either to himself or others or to the community in the reasonably foreseeable future, and is capable of distinguishing right from wrong and has substantial capacity to conform his conduct to requirements of law.'*

Section 16–8–120(3), C.R.S. (1986 Repl.Vol. 8A)(emphasis added).

The procedure for release on the recommendation of the hospital is set forth in § 16–8–116(1), C.R.S. (1986 Repl.Vol. 8A) which states, in pertinent part:

When the chief officer of the institution in which a defendant has been committed after a finding of not guilty by reason of

insanity determines *that the defendant no longer requires hospitalization because he no longer suffers from a mental disease or defect which is likely to cause him to be dangerous to himself, to others, or to the community in the reasonably foreseeable future*, such chief officer shall . . . . (emphasis added)

On August 23, 1990, the trial court granted the State Hospital's request to place defendant on conditional release pursuant to § 16–8–120, C.R.S. (1986 Repl.Vol. 8A), incorporating a recommendation of the Chief Officer of the Colorado State Hospital dated July 30, 1990, which stated in pertinent part:

[Defendant] no longer suffers from an abnormal mental condition which would be likely to cause him to be dangerous either to himself or to others or to the community in the reasonably foreseeable future, and is capable of distinguishing right from wrong and has substantial capacity to conform his conduct to requirements of law.

For my purposes, the terms, "abnormal mental condition," "mental illness," and "mental defect" are synonymous. *Kansas v. Hendricks,* 521 U.S. 346, 117 S.Ct. 2072, 138 L.Ed.2d 501 (1997)(for substantive due process purposes, the terms "mental illness," "mental abnormality," and "personality disorder" are synonymous terms capable of legislative definition without reference to any scientific definition or use). *See also People v. Parrish,* 879 P.2d 453 (Colo.App.1994).

Defendant's release was unopposed and was conditioned on terms contained in the chief officer's letter which were likewise incorporated into the court's order, requiring, *inter alia,* that defendant live in Biloxi, Mississippi, participate in outpatient services, refrain from using alcohol and nonprescribed drugs, and submit to random urine screens. The order further provided that the terms would remain in effect for one year and could be modified or terminated only by further court order.

On June 14, 1994, the People filed their second petition to revoke defendant's conditional release on the grounds that he had violated the terms of his release, as subsequently amended and agreed to, by virtue of

three urine analyses that tested positive for drugs on September 10, 1993, and March 2 and April 27, 1994.

At the revocation hearing, the court heard testimony by the state psychiatrist who personally evaluated defendant and had followed defendant's progress while on conditional release by reviewing reports from an outpatient clinic in Mississippi. The psychiatrist testified to defendant's three positive urine screens, his failure regularly to submit to monthly urine screens, and to an incident in which defendant pretended to shoot people at the Mississippi clinic. The doctor offered his opinion that defendant *had a recurrence of his mental illness and as a result was a danger to others.*

The trial court found that defendant had violated two of the terms of his conditional release by failing to submit to monthly urine screens and by his failure to avoid using drugs, as shown by the three positive urine tests. Upon these findings alone, the trial court ordered defendant's conditional release revoked and remanded him to the Colorado State Hospital.

Despite having received some evidence, and having permitted argument on the issue, the trial court refused to rule upon whether defendant was suffering from a mental illness and constituted a danger to himself or others. The trial court's refusal to make findings as to defendant's current mental condition was premised on the failure of the prosecution to allege his mental condition as a basis for revocation of the conditional release.

The trial court, by placing defendant on conditional release and incorporating the letter of the staff psychiatrist into its order, found that defendant had, in fact, satisfied the conditions of § 16–8–120(3), *i.e.*, the condition precedent to unconditional release. The eligibility standard for conditional release and unconditional release are the same.

If a defendant is unconditionally released, the trial court may impose terms and conditions in the interests of the defendant and the community. Section 16–8–115(3)(a), C.R.S. (1986 Repl.Vol. 8A). If a defendant is conditionally released, continued treatment is

contemplated and the institution is required to provide written terms and conditions for the continued treatment of the defendant and the defendant remains under the supervision of the Department of Institutions. Section 16–8–115(3)(b) & (c), C.R.S. (1986 Repl.Vol. 8A).

A conditional release may be revoked by a court pursuant to § 16–8–115.5, C.R.S. (1996 Cum.Supp.), upon a finding based on a preponderance of the evidence that the defendant has become "ineligible to remain on conditional release." That term is defined in § 16–8–102(4.5), C.R.S. (1986 Repl.Vol. 8A) as follows:

> [T]he defendant has violated one or more conditions in his release, *or* the defendant is suffering from a mental disease or defect which is likely to cause him to be dangerous to himself, to others, or to the community in the reasonably foreseeable future, if he is permitted to remain on conditional release. (emphasis added)

The statute permits revocation in two instances: (1) a violation of the terms of conditional release or (2) a finding that defendant suffers from a mental disease or defect and is dangerous. Either basis for revocation must be shown by a preponderance of the evidence.

Defendant argues that the portion of § 16–8–115.5, which authorizes revocation solely upon noncompliance with the terms of his release, violates the due process guarantees of the Sixth and Fourteenth Amendments to the U.S. Constitution and Article II, §§ 16, 25 of the Colorado Constitution. Under the circumstances presented here, I agree.

In *Addington v. Texas,* 441 U.S. 418, 99 S.Ct. 1804, 60 L.Ed.2d 323 (1979), the United States Supreme Court held that a citizen could not be committed to a psychiatric facility in a civil proceeding without a clear and convincing showing that he was mentally ill and that hospitalization was required for his own welfare or the protection of others. In *Jones v. United States,* 463 U.S. 354, 103 S.Ct. 3043, 77 L.Ed.2d 694 (1983), the court held that a finding of not guilty by reason of insanity in a criminal proceeding satisfied *Addington* for commitment purposes even though the burden of proof was by a preponderance of the evidence, but the insanity

acquittee could be held only so long as he was both mentally ill and dangerous, and no longer. Similarly, in *O'Connor v. Donaldson*, 422 U.S. 563, 95 S.Ct. 2486, 45 L.Ed,2d 396 (1975), the court held that it was unconstitutional to confine a harmless mentally ill person.

In the more recent *Foucha v. Louisiana*, 504 U.S. 71, 112 S.Ct. 1780, 118 L.Ed.2d 437 (1992), defendant was found not guilty by reason of insanity. Under Louisiana law, an insanity acquittee is committed to a psychiatric hospital unless and until he proves that he is not dangerous, and Foucha was so committed. Subsequently, however, a panel of physicians expressed the opinion that there was no evidence of mental illness and recommended conditional discharge.

The trial court appointed a sanity commission which opined that Foucha's mental illness was in remission but declined to certify that he would not be a danger to himself or others if released because he had an antisocial personality which was, in its opinion, untreatable. Based on that opinion, Foucha's conditional release was denied because he remained dangerous to himself and others without any evidence that he was presently mentally ill.

The Louisiana Supreme Court affirmed and a divided United States Supreme Court reversed, holding that the continued hospitalization of Foucha without a finding that he was mentally ill denied him substantive due process.

Most recently, the United States Supreme Court reiterated the necessity of both a "mental illness" and "dangerousness" as necessary predicates to involuntary commitment in *Kansas v. Hendricks, supra*. While eligibility for consideration for involuntary commitment requires a history of sexually violent acts, the Kansas statute defines "mental abnormality" as, essentially, a predisposition to commit sexually violent acts. The Supreme Court concluded that a "mental abnormality," so defined, coupled with a propensity to commit "predatory acts of sexual violence" in the future (dangerousness) was sufficient to support an involuntary civil commitment for an indefinite period.

While the respondent in *Hendricks* was diagnosed as a pedophile, a clinically recognized condition, and he conceded he could not control his behavior the court did not limit the ability of the legislature to define "mental abnormality" to include specific clinically recognized conditions. The Kansas commitment procedure required, *inter alia*, the appointment of experts and counsel at public expense, a jury trial upon request, and proof beyond a reasonable doubt.

Therefore, as I read *Addington, Jones, O'Connor, Foucha*, and *Hendricks*, it is a violation of substantive due process to involuntarily commit or recommit a person, even an insanity acquittee, to a psychiatric facility without a finding that he is mentally ill and dangerous.

Here, in contrast, there is no finding that defendant is mentally ill and no finding that he is dangerous. Indeed, the last judicial finding is precisely to the contrary.

Ignoring for purposes of this discussion the due process implications of: (1) the burden of proof, which is here a preponderance of the evidence and not clear and convincing evidence; (2) the shifting of that burden to the defendant in order for him to gain release; and (3) the fact that this is a criminal and not a civil proceeding, all of which are of considerable independent significance, I conclude the state cannot involuntarily criminally or civilly commit this defendant to a psychiatric facility for an indefinite period without a finding that he is mentally ill and dangerous.

Defendant cannot, as I perceive has happened here, be involuntarily committed for an indefinite period to a psychiatric facility for the failure to submit to, or the failing of, drug screens regardless of the relationship between those drug screens and any mental illness he may have suffered in the past.

The majority relies to a considerable degree on *People v. McCoy*, 821 P.2d 873 (Colo.App.1991), which involved revocation of a conditional release based solely upon noncompliance with the conditions of release. In *McCoy*, a division of this court held that a conditional release could be revoked for noncompliance with the conditions because such noncompliance indicated a risk of future dangerousness. *McCoy*, however, did not discuss the due process implications of its

holding; was decided before *Foucha v. Louisiana, supra* and *Kansas v. Hendricks, supra;* did not discuss the previously decided *Addington v. Texas, supra, Jones v. United States, supra,* or *O'Connor v. Donaldson, supra;* and did not consider the due process implications of an immediately prior judicial finding that the defendant did not suffer from any abnormal mental condition, was not dangerous, and could distinguish right from wrong and could adhere to lawful conduct.

In my view, conditional release is not an outpatient treatment program for insanity acquittees, though it bears some markings of such a program. While an outpatient treatment program for insanity acquittees may be highly appropriate, eligibility for such a program should differ from eligibility for unconditional release and not require a finding that the defendant no longer suffers from any mental illness, is no longer dangerous, and can distinguish between right and wrong and can adhere to lawful conduct.

I would reverse and remand with directions to deny the motion to revoke defendant's conditional release as it fails, in my view, to allege any basis upon which defendant may be recommitted consistent with substantive due process.